BEARD *v.* BANK OF OSCEOLA.

Opinion delivered December 18, 1916.

1. VENDOR'S LIENS—RESERVATIONS OF LIEN—RIGHTS OF INNOCENT PURCHASER OF LIEN RETAINING NOTES.—Where land is conveyed, with a recital in the deed that notes were given for the purchase price, and a lien retained to secure the same, all subsequent purchasers of the land take the same subject to the lien, which exists in favor of any innocent holder of the notes, who has taken them for value, before maturity.

2. VENDOR'S LIENS—RIGHTS OF HOLDER OF NOTES—ANTECEDENT INDEBTEDNESS.—The rule as stated above is the same, although the holder of the notes took the same to secure an antecedent indebtedness.

Appeal from Mississippi Chancery Court; *Chas. D. Frierson*, Chancellor; affirmed.

*A. G. Little* and *Churchill M. Buck*, for appellant.

1. There was no vendor's lien retained in the deed; nothing to put appellants upon notice. But if a lien was retained the deed of release was sufficient to cancel and release same. Beard was an innocent purchaser for value without notice and had a right ,to rely upon the records showing satisfaction. Appellant has the greater equity. A vendor's lien does not pass unless expressly

reserved in the deed, except where the note is transferred as collateral security; and then if the lien is not reserved or does not appear on the face of the deed it is not good against innocent purchasers, for value without actual notice. 37 Ark. 571; 41 *Id.* 292. Beard had no notice of any lien and had a right to rely upon the records showing satisfaction. 18 Ark. 162; 23 *Id.* 257; 28 *Id.* 401.

2. The two notes of Barron and Lilly were assigned without recourse and by Lilly endorsed to the bank in blank. This did not transfer the lien. 23 Ark. 258. A quitclaim deed, if unexplained, is a circumstance to show notice. 23 Ark. 735; 50 *Id.* 322. The notes were endorsed in blank and in the absence of testimony as to the date of assignment they must be treated as having been assigned on that date most favorable to defendant. Kirby's Digest, § 520; 31 Ark. 20; 90 *Id.* 334; 31 *Id.* 128.

3. One who takes a note as collateral security for a pre-existing debt is not an innocent purchaser. 13 Ark. 163; 94 *Id.* 387.

4. Beard purchased, relying upon the records, and should be protected as against appellee who took an assignment as collateral security for a pre-existing debt after the record had been satisfied. 26 Law Ed. U. S. 245; 27 *Id.* 529; 199 U. S. 251; 73 N. E. 404; 106 N. W. 846; 54 S. E. 901; 56 *Id.* 163; 84 N. W. 353; 46 Am. St. 70; 15 L. R. A. (N. S.) 1025; 131 Am. St. 996; 129 *Id.* 927; 110 *Id.* 924; 120 *Id.* 1030; 59 Am. Rep. 49; 51 Am. Dec. 147; 64 *Id.* 197; 63 Am. St. 460; 138 Wisc. 82; 131 Am. St. 997; 28 Kans. 497; 42 Am. St. 173.

5. In answer to the contention that Beard should have inquired as to the location of the notes at the time he purchased, see 107 U. S. 478-484; 4 S. W. Rep. 834. Appellant is an innocent purchaser and had a right to rely upon the records showing the title clear and unincumbered.

*J. W. Rhodes, Jr.,* and *W. J. Lamb,* for appellee.

1. This case is almost identical with *Driver* v. *Lacer,* May 22, 1916. The law fixes a, lien when the purchase money is not paid. 94 Ark. 301; 105 *Id.* 201; 93 *Id.* 371; 99 *Id.* 438. A lien appears upon the face of the deed. Kirby's Digest, § 510; 180 S. W. 216; 176 *Id.* 316. Beard was necessarily affected with notice of the lien. Kirby's Digest, § 5403; *Ib.* 511, 510-12; 27 Cyc. 1296, 1314 N. 2; *Ib.* 1315, Note B; 51 N. W. 520.

2. The law fixes the lien when the purchase money is not paid. It is not the recital of the lien. 94 Ark. 301; 105 *Id.* 201; 93 *Id.* 371; 99 *Id.* 438. It appears on the face of the deed that there is a note which is a lien. Kirby's Digest, § 510; 120 Ark. 616; 118 Ark. 316.

3. The appellee has the greater equity. Beard was not an innocent purchaser as the records were not satisfied. To protect himself he should have inquired at least. 115 Ark. 366; 105 Ark. *Koen* v. *Miller; Driver* v. *Lacey,* 124 Ark. 150; 186 S. W. 824; 27 Cyc. 1315, Note B; 68 A. S. R. 685; 46. *Id.* 70; 94 Ark. 387; 25 Kans. 625; 51 *Id.* 580; 63 N. W. 37; 66 *Id.* 57; 51 *Id.* 520; 129 Am. St. Rep. 927-931; 110 *Id.* 924; 106 *Id.* 472; 63 Am. St. R. 460.

McCULLOCH, C. J. This is an action instituted by the plaintiff, Bank of Osceola, in the chancery court of Mississippi county, Chickasawba District, to foreclose certain liens on three 40-acre tracts of land in that county described as the west half of the northwest quarter, and the southeast quarter of the northwest quarter, of section 25, township 16 north, range 11 East.

There is no dispute about the material facts of the case, which are as follows: On September 2, 1909, J. W. Barron and O. R. Lilly sold and, by warranty deed, conveyed to Ben Bunch one of said 40-acre tracts, the southeast quarter of the northwest quarter of section 25, for the sum and price of $1,300.00, evidenced by a negotiable promissory note of that date executed by

said Bunch to Barron and Lilly, bearing 10 per cent. interest per annum, due and payable ten years after date; Barron assigned his interest in the note before maturity to Lilly, and Lilly assigned the note before maturity to plaintiff; on December 1, 1909, J. P Meador executed to Barron and Lilly two deeds of trust on the west half of the northwest quarter of section 25, one to secure a negotiable promissory note in the sum of a thousand dollars. and the other to secure a negotiable promissory note in the sum of two thousand dollars, both of which notes were assigned before maturity to plaintiff by Barron and Lilly; on March 4, 1910, Meador sold and by warranty deed conveyed to Bunch the southwest quarter of the northwest quarter of section 25, for the price of one thousand dollars, as evidenced by a negotiable promissory note executed by Bunch to Meador, due and payable ten years after date, with interest at the rate of 10 per cent. per annum, and this note was by Meador assigned before maturity to Lilly, and by Lilly assigned before maturity to plaintiff. The assignments of the various notes set forth above to the plaintiff were for the purpose of securing the payment of certain indebtedness of Barron and Lilly to the plaintiff, which has not been paid.

On the 7th of May, 1910, Meador conveyed the northwest quarter of the northwest quarter of section 25 to M. A. Rudder and J. A. Hopkins, who subsequently conveyed to one Fisher, and on November 14, 1910, Bunch conveyed to Fisher the south half of the northwest quarter of section 25, which said conveyances put the legal title in Fisher subject to the lien for the purchase money and mortgage notes referred to above. On April 12, 1912, Barron and Lilly executed to Fisher a quitclaim deed conveying all their interest in the aforedescribed tracts, said deed reciting a consideration of $1.00, and also reciting that the deed was made for the purpose of releasing the deeds of trust and vendors' liens arising under the deeds already described. On April 15, 1912, Fisher conveyed all of said lands to W. A. Beard, one of the defendants herein, who subse-

quently mortgaged the land to John G. Powell, who is also made defendant. All of the deeds hereinbefore referred to were promptly placed of record in Mississippi county. It is not definitely shown whether said notes were assigned to the plaintiff before or after the execution of the release deed by Barron and Lilly to Fisher on April 12, 1912, and for the purposes of this decision we assume that they were assigned after the execution of that deed, but before the maturity of the notes and for an antecedent indebtedness.

The chancellor decreed in favor of the plaintiff for a foreclosure of the liens, and defendants Beard and Powell have prosecuted an appeal to this court.

Counsel for appellants have brought to, our attention in the brief various authorities from other courts bearing on the points at issue, but we are of the opinion that every point raised in the case has been heretofore decided by this court against the contention of appellants' counsel. The principal contention is that as between the two innocent parties—that is, the appellants, as innocent purchasers of the property subsequent to the execution of the release deed from Barron and Lilly to Fisher, and the plaintiff bank as the holder of the lien notes—the former is entitled to the first consideration, and that the lien of the notes in the hands of the bank should not be held to be superior to the rights of appellants as subsequent purchasers of the land. This contention has been expressly decided against appellants in the recent case of *Driver* v. *Lacer*, 124 Ark. 150, 186 S. W. 824, and cases cited therein. The facts of the case just cited are very similar in all essential respects to the facts of the case at bar. The notes in that case were, as in the present case, assigned after the execution of the deed by the original grantor, which would otherwise have operated as a release, and we held that the release was ineffectual against the rights of an innocent holder of the negotiable promissory note. We said that the subsequent deed of the original purchaser was not in the line of the title of the purchaser of the notes, and he was not, therefore, bound to take constructive notice

of that deed on the record, and that the subsequent purchaser of the land, in order to protect himself, must have demanded a surrender of the notes. "In no other way," we said, "could he protect himself against a *bona fide* holder of the notes before their maturity."

It is true that there is this difference between the two cases: In *Driver* v. *Lacer* the deed recited an express reservation of the vendor's lien, whilst in the present case the deeds, or at least one of them, merely recites the execution of the notes but do not in express terms reserve a lien. That, however, is an unimportant distinction between the two cases. Our statute, Kirby's Digest, section 510, provides that the lien possessed by the vendor of real estate, "when the same is expressed upon or appears from the face of the deed or conveyance shall inure to the benefit of the assignee of the note or obligation given for the purchase money of such real estate." It is not essential, therefore, that the lien be expressly reserved, as it is only necessary that the lien shall "appear from the face of the deed." *Stephens* v. *Anthony*, 37 Ark. 571. The lien is not a creature of contract, but is a creature of equity and arises by operation of law out of the contract for the payment of the purchase price, and the effect of the statute is merely to preserve that lien to the purchaser of the note when the same is "expressed upon or appears from the face of the deed or conveyance." The notes and the lien are inseparable, and the lien passes by the assignment of the notes. *Pullen* v. *Ward*, 60 Ark. 90; *Driver* v. *Lacer, supra.*

It is insisted that this case is different from *Driver* v. *Lacer* in another respect, namely, that the negotiability of the notes does not appear from the face of the deed so as to constitute notice to subsequent purchasers of the land. The answer to this contention is that the statute itself, which we have already quoted, makes the lien inure to the benefit of an assignee of the note, and the subsequent purchaser of the land must take notice of the recital of the deed, for that is in the line of his title. The recital that the purchase money is unpaid is

sufficient to put all parties upon notice, and they must protect themselves by evidence of the fact that the purchase money has been paid and that negotiable promissory notes are not outstanding in the hands of innocent purchasers. Any other construction would defeat the manifest purpose of the law-makers in enacting this statute. The fact that the notes were assigned to plaintiff to secure antecedent indebtedness does not impair the right to assert claims of an innocent holder of the notes. *Exchange National Bank* v. *Coe*, 94 Ark. 387.

It is urged with considerable zeal that as between the holders of the note and a subsequent purchaser of the land, the latter should be protected for the reason, it is said, that the holder of the note had better opportunity to protect himself. We think, however, that the reverse is true, and that the subsequent purchaser has the best opportunity to protect himself by requiring an exhibition or surrender of the evidences of the indebtedness on the purchase money of the land. This is the basis of our decision in *Driver* v. *Lacer*, *supra*, which is conclusive of that question.

Finally it is contended that the lien for the note given as consideration by Bunch to Meador could not be declared a lien against appellants for the reason that the deed itself fails to show that any note was executed, and also that it negatives the fact that the lien was reserved. The deed from Meador to Bunch recites the consideration as follows: "$1,500.00 to be paid as follows: one note for $250.00, due and payable November 1, 1912, and one note for $250.00, due and payable November 1, 1913, and balance due and payable ten years from date. Said notes bearing interest at the rate of 10 per cent. per annum from date until paid. A lien is retained on said land to secure the payment of said notes." This recital is sufficient to show that there is unpaid purchase money due to the extent of $1,500.00, and it is fairly inferable from the language used that a note was executed for the thousand dollars due and payable in ten years, as well as for the other two pay-

ments of $250.00 each. It is not a fair construction of the language to say that it was only intended to recite that there were two notes for $250.00 each, and that there was a reservation of a lien only to secure those two notes.

It is unnecessary to say anything further with respect to the lien of the notes secured by the mortgage executed by Meador to Barron and Lilly, for what we have said about the assignment of the notes secured by the vendor's lien applies with equal force to the lien of the notes secured by the mortgage. *Pullen* v. *Ward, supra.*

The principles here announced having been recognized and decided in repeated opinions of this court, and having become rules of property in this State, we deem it unnecessary at this time to determine whether or not those decisions are in line with the weight of authority in other jurisdictions. Our conclusion being that the decision of the chancellor was correct, the decree is, therefore, affirmed,