HEBERT v. FELLHEIMER.

## Opinion delivered November 23, 1914.

1. VENDOR'S LIEN—LIEN RETAINING NOTES—RIGHTS OF PURCHASER OF NOTES.—The purchaser of land gave a series of negotiable promissory notes in payment therefor. The deed was recorded and recited the retention of a vendor's lien to secure payment of the notes. *Held*, an innocent purchaser of the notes was entitled to enforce the lien retained for their payment, and this right is not defeated by a subsequent reconveyance by the buyer to the seller.

2. VENDOR'S LIEN—RECORDED DEED—NOTICE.—All subsequent purchasers of property take subject to a lien thereon, when a recorded deed recites that a lien is retained on said property, to secure the payment of certain notes given for the purchase thereof.

3. VENDOR'S LIEN—PURCHASE MONEY NOTES—RIGHTS OF HOLDER.—Where land is sold and a lien retained in the deed to secure the payment of purchase money notes, and the deed recorded, a notation on the margin of the record of the deed is unnecessary, to show an assignment of the notes, in order to reserve to the purchaser of the notes, the rights retained in the deed.

4. VENDOR'S LIEN—REPURCHASE—EXTINGUISHMENT OF LIEN.—In a deed transferring title to land a lien was retained to secure the payment of certain purchase money notes. These notes were assigned to an innocent purchaser for value, without a notation of such assignment in the record. *Held*, the right of the purchaser of the notes to enforce the lien retained in the deed was not defeated by a reconveyance of the property from the original vendee to the original vendor.

5. BILLS AND NOTES—TRANSFER—PAYMENT TO PAYEE.—The maker of a negotiable note takes the risk of payment of it to the payee and is not discharged from his obligation to the holder thereof if it has been transferred.

Appeal from Garland Chancery Court; *J. P. Henderson*, Chancellor; affirmed.

### STATEMENT BY THE COURT.

F. H. Olmstead and wife, Louisa Olmstead, conveyed certain lands by warranty deed on December 1, 1906, to W. S. Mackey, for a consideration of $3,500, the deed reciting $500 paid in cash and the balance evidenced by 150 notes for $20 each, due monthly, and a vendor's lien reserved therein to secure the payment of the notes. The notes for the deferred payments were negotiable promis-

sory notes for $20 each, payable to the order of F. H. Olmstead, with 8 per cent. interest, and each recited that it was a certain number of a particular series of notes aggregating $3,000, mentioned in the deed of even date from Olmstead to Mackey and secured by a lien on the property conveyed, describing it. Fellheimer purchased for value 100 of these notes, numbered from 51 to 150 on the 4th day of June, 1907, in the usual course of trade before maturity and the same were endorsed by Olmstead and delivered to him. On the 21st day of March, 1908, Mackey executed a deed of trust upon the lands to C. N. Rix, trustee, to secure the payment of an indebtedness of $520 evidenced by five notes to F. H. Olmstead. These notes were assigned and delivered to G. A. Hebert, on April 16, 1908, as collateral to secure the payment of Olmstead's $500 note to him and the deed of trust was marked satisfied on the margin of the record by F. H. Olmstead on March 21, 1910. On the 10th day of January, 1910, Mackey reconveyed the lands to Olmstead for a recited consideration of $10 and other valuable considerations, the receipt of which was acknowledged. Olmstead and his wife conveyed the lands to W. H. Moore by warranty deed on May 4, 1910, for $10 and other valuable considerations, who, on April 7, 1911, conveyed them to Louisa Olmstead for a consideration of $10 and the assumption of the payment of a certain deed of trust to Jeff Fletcher. On April 8, 1911, F. H. Olmstead and Louisa, his wife, executed a deed of trust conveying these lands to C. Floyd Huff, trustee, to secure the payment of a note for $2,000 borrowed money, to Virginia L. Thornton, *cestui que trust*. Hebert brought suit to foreclose the deed of trust securing the notes held as collateral by him for the payment of the $500 due him from Olmstead, alleging that Mackey had subsequently conveyed the land to Olmstead for a nominal consideration by deed of record March 19, 1910, and that the deed of trust executed by Mackey to C. N. Rix, trustee for Olmstead, to secure the collateral notes was duly recorded,

that there appeared on the margin of the record of said deed the notation: "Attest H. A. Whittington, on this 21st day of March, 1910. I hereby acknowledge satisfaction in full and release the property described in this deed of trust. F. H. Olmstead." And, that said entry was made without authority and that the debt secured by the deed of trust had not been satisfied; that C. N. Rix was the trustee, the holder of the legal title to the lands, and in law the proper person to satisfy the deed of trust, and that the notation of satisfaction by Olmstead did not operate to release the lands nor to the benefit of subsequent purchasers and incumbrancers.

Mrs. Thornton answered, denying that Hebert held said Mackey notes as collateral and alleged that he failed to make the fact a matter of record so as to impart notice to subsequent purchasers and that the satisfaction of record of said deed of trust by Olmstead was valid and released the property from the lien thereof, she having loaned money on the faith of the record, and being entitled to protection as an innocent purchaser. Hebert amended his complaint, making Fellheimer a party. Fellheimer filed suit, alleging the conveyance of the land by Olmstead to Mackey by warranty deed, reciting the reservation of a lien for the payment of the remainder of the purchase money evidenced by the 150 $20 notes, and that each note recited also retention of the vendor's lien on the land with description thereof; that before maturity in due course of trade and for a valuable consideration he purchased 100 of the said notes, numbered from 51 to 150, from Olmstead, who endorsed and delivered them to him and asked for a foreclosure of the vendor's lien. Mackey, Olmstead and Thornton were made parties to this suit. Thornton answered this complaint, admitting the execution of the notes and deeds, but denied that Fellheimer was the legal holder of the notes and alleged that the said owner paid the notes and the lien was extinguished by subsequent conveyance from Mackey to Olmstead, that she had the title

examined by a competent attorney and afterwards, upon his report that the title was good, made her loan of $2,000 and asked that her lien be declared paramount to that of Fellheimer. The two cases were consolidated on trial and the court directed a foreclosure of all demands and mortgages and declared Fellheimer's lien superior to that of both the appellants and the lien of Thornton superior to Hebert and ordered the proceeds of the sale distributed accordingly, and from this judgment Hebert and Thornton appealed.

*Rector & Sawyer,* for appellant Hebert; appellant Thornton *pro se.*

1. While the deed under which Fellheimer claims is recorded and shows the execution of the notes, the record does not disclose an assignment of the notes to him. The deed of trust under which Hebert claims is, therefore, a superior lien, he not having notice of an outstanding lien held by Fellheimer. 39 Cyc. 1830, 1833.

The assignment to Fellheimer, not having been recorded, he only has the right to sue on the notes and foreclose the lien against Mackey and Olmstead. 39 Cyc. 1825.

Olmstead's assignment of purchase money notes to Fellheimer was an assignment of an equitable title or interest, and ought to have been recorded. Kirby's Dig., § § 762, 763; 39 Cyc. 1813.

Olmstead relinquished the vendor's lien by taking the deed of trust and by taking the deed from Mackey. Appellants were not required to look further than Olmstead. 73 Ark. 592.

2. Appellants request the court to decide the priority of lien as between them.

*James E. Hogue,* for appellee.

Upon the assignment of the notes to Fellheimer, his lien became complete. 11 Ark. 4; 18 Ark. 508; *Id.* 85; 60 Ark. 90; 73 Ark. 589; 72 Ark. 350.

·It was not necessary for the assignment of the notes. to be entered on the record. The deed was recorded, and it gave notice to the world of the execution of the notes and of the fact that they were negotiable. 69 Ark. 95; 60 Ark. 90.

KIRBY, J., (after stating the facts). (1) A vendor's lien was retained in the recorded deed from Olmstead to Mackey to secure the unpaid purchase money evidenced by the 150 $20 negotiable promissory notes, as recited in the deed, and Fellheimer, in the usual course of trade for value, and before maturity, purchased 100 of said notes and the same were endorsed and delivered to him. By said purchase he became the innocent holder thereof and entitled to enforce the lien for their payment. Section 510, Kirby's Digest; *Smith* v. *Butler,* 72 Ark. 350; *Pullen* v. *Ward,* 60 Ark. 90.

(2) The later reconveyance of these lands from Mackey to Olmstead for a recited consideration acknowledged received, did not have effect to displace the lien nor deprive Fellheimer, the *bona fide* holder of the purchase money notes to whom it passed as an incident to the transfer of the notes, of the benefit thereof and the right to enforce same. Fellheimer had no authority to prevent any such conveyance, and all those who took or were interested in the different conveyances of the property after Olmstead's deed to Mackey, reciting a portion of the consideration unpaid and expressly retaining a lien to secure the payment thereof was recorded, were necessarily affected with notice of the lien retained for the benefit of the vendor and the assignee of any of the purchase money notes. Sections 762-3, Kirby's Digest; *Turman* v. *Sanford,* 69 Ark. 95; *Green* v. *Maddox,* 97 Ark. 402.

(3) Although the lien reserved in the face of the deed to secure the payment of the purchase money notes passing as an incident thereto upon the assignment of the notes, is analogous to a mortgage executed to secure the payment of a note and controlled by the same rules

of law (*Pullen* v. *Ward, supra*), still the notes are not instruments affecting the title to real estate within the meaning of the recording act, and no record of them, nor their transfer, is required by it. The law does not require a notation of the assignment of the purchase money note made upon the margin of the record of the deed reserving the lien and the purchaser of said notes acquired the right to enforce the lien for the payment thereof superior to any right thereafter acquired by Hebert and Thornton under their contracts. The lien passes with the transfer of the notes and expires when they are paid.

(4-5) It is argued that the recorded conveyances of the land by Mackey to Olmstead for a consideration acknowledged paid released the vendor's lien reserved in his deed for the payment of the purchase money and that subsequent purchasers and lien holders could not but have understood therefrom that the consideration in the first deed was paid and the lien extinguished. Said deed, however, did not recite that the said consideration was paid nor was there any notation upon the margin of the record of the deed reserving the lien indicating that such was the fact. It is also true that the record did not disclose the transfer of these purchase money notes nor the owner thereof, but it did disclose that a lien was retained for their payment which inures, under the law, to the assignee of the notes without any record notation of the assignment made. It is also well known that the maker of a negotiable note takes the risk of payment of it to the payee and is not discharged from his obligation to the holder thereof if it has been transferred. *Koen* v. *Miller,* 105 Ark. 152, 150 S. W. 412. It was there said: "A mortgagor executing a mortgage as security for a negotiable note is charged with the knowledge that the note is negotiable, and he makes payment to the original mortgagee without the production of the note at his peril, and the payments so made are of no effect as against an endorsee thereof who had possession at the time the payments were made."

Appellants can not complain that Fell'heimer gave them no notice that he was the owner of the purchase money notes with the right to enforce the lien for payment since nothing more was required of him by the law than that his lien should be expressly reserved in the deed retaining it.

The state of this record does not appear to require a decision of the question as between appellants, whose lien is superior, and furthermore, it discloses that the lands were sold and purchased by appellee for a much less sum than his judgment called for, thus precluding the possibility of either of appellants obtaining anything from the proceeds of the sale, without regard to the priority of the lien. The question as between them is not therefore, decided.

Finding no error in the record, the decree is affirmed.