NEAL *v.* BRADLEY.

5-3353                                        384 S. W. 2d 238

Opinion delivered November 30, 1964.

*W. Dane Clay, Rose, Meek, House, Barron, Nash &
Williamson,* for appellant.

*Josh W. McHughes, Brooks Bradley* and *J. H. Car-
michael, Jr.,* for appellee.

ED. F. McFADDIN, Associate Justice. The issue here
posed is the matter of priority as between assignments.
This is the second appearance of these parties in this
Court. The first case was *Bradley et al.* v. *Neal,* 234 Ark.
728, 354 S. W. 2d 269, in which we held that Bradley
*et al.* were entitled to judgment against the estate of W.
B. Warren in the sum of $3,000.00 and we remanded the
case with directions, and such judgment was rendered
on April 18, 1962.

Then on May 15, 1962, Bradley and McHughes filed
the present action in the Probate Court, alleging that the
$3,000.00 judgment was unpaid and that Virginia Warren
Neal, individually or as executrix of the Estate of W. B.
Warren, had in her possession certain notes which had
been duly assigned to Bradley and McHughes, and that
she should be required to deliver to Bradley and Mc-
Hughes sufficient of the proceeds of said notes to satisfy
the $3,000.00 judgment, with interest and costs.

This petition was resisted by Virginia Warren Neal, who claimed that she—personally—held an assignment of the said notes, which assignment was prior in point of time to the assignment to Bradley and McHughes. The Trial Court held that the assignment to Bradley and McHughes was superior to the Virginia Warren Neal assignment, and from that holding there is this appeal; and the points listed are:

"I. The recordation statutes do not apply to an assignment of notes.

"II. If the recordation statutes were applicable, appellees had actual notice of the prior interest of appellant.

"III. Res Judicata is inapplicable."

The evidence disclosed the following:

(1) That W. B. Warren and Zelma Lee Warren, his wife, were the owners of two notes as follows: one note dated December 21, 1949 for the original sum of $15,132.22 payable $155.00 monthly beginning January 21, 1950, principal and interest, signed Charley Hughes and Hattie Hughes, and secured by a lien on certain real estate; and one note dated December 21, 1949 for the original amount of $17,774.51 payable $125.00 monthly beginning January 21, 1950, principal and interest, signed by Claudia Carter and secured by a lien on certain real estate.

(2) That the said two notes were left with Block Realty Company in Little Rock for collection and remittance to Mr. and Mrs. Warren.

(3) That on September 5, 1956, W. B. Warren and Zelma Lee Warren, his wife, executed, acknowledged, and delivered to Virginia Warren Neal an assignment of the said notes, subject to a retained life estate in Mr. and Mrs. Warren. This assignment[1] was never recorded.

---

[1] This assignment read: "ASSIGNMENT. KNOW ALL MEN BY THESE PRESENTS: That we, W. B. Warren, and Zelma Lee Waren, his wife, in consideration of love and affection and other valuable consideration, do hereby set over, assign, and convey unto Virginia Warren Neal, the following described notes:

(4) That Block Realty Company was informed of the said assignment to Virginia Warren Neal; and that after the death of Zelma Lee Warren, Virginia Warren Neal became executrix of her estate and Block Realty Company remitted each month the collections on the said notes by check payable to *"W. B. Warren and Virginia Neal, Administratrix."*

(5) That on May 16, 1960, W. B. Warren executed, acknowledged, and delivered to Brooks Bradley an assignment[2] of the same notes.

---

"The Claudia Carter note, upon which a principal balance of $13,-566.99 remains due, and which note is payable in installments of $125.00 per month, said note being secured by a first mortgage on the following described property, to-wit: The West 65 feet of Lot 1, and the North 35 feet of the West 65 feet of Lot 2, Block 233, ORIGINAL CITY OF LITTLE ROCK; and "The Charley Hughes note, upon which a principal balance of $6,864.49 remains due, said note being payable in monthly installments of $155.00 per month, and payment for which is secured by a first mortgage on the following described property, to-wit: The West 100 feet of Lot 3, Block 233, and that part of Lot 2, Block 233, ORIGINAL CITY OF LITTLE ROCK, which is described as follows: The South 15 feet of the West 55 feet of said Lot 2, and the South 10 feet of the East 35 feet of the West 100 feet of said Lot 2.

"The parties hereto do, however, reserve for themselves or the survivor of them, the monthly income for life from each of the aforesaid notes.

"WITNESS OUR HANDS AND SEALS ON THIS 5th DAY OF SEPTEMBER, 1956. /s/ W. B. WARREN /s/ ZELMA LEE WARREN."

[2] This assignment reads: "ASSIGNMENT. For valuable consideration, I, the undersigned, hereby sell, transfer, assign, set over and deliver to Brooks Bradley the unpaid balance on the following described notes, owned by me and now held for collection by Block Realty Company, Little Rock, Arkansas, to-wit:

"1. One note dated December 21, 1949 for the original sum of $15,132.22 payable $155.00 monthly beginning January 21, 1950, principal and interest, signed Charley Hughes and Hattie Hughes and secured by a lien on the following property located in Pulaski County, Arkansas, to-wit: West 100' of Lot 3 and Part of Lot 2, Block 233, Original City of Little Rock, Arkansas.

"2. One note dated December 21, 1949, for the original amount of $17,774.51 payable $125.00 monthly beginning January 21, 1950, principal $125.00 monthly beginning January 21, 1950, principal and interest, signed by Claudia Carter and secured by a lien on the following property located in Pulaski County, Arkansas, to-wit: West 65' of Lot 1 and North 35' of West 65' of Lot 2, Block 233, Original City of Little Rock, Arkansas.

"This assignment is made for the purpose of securing advances made to me, represented by notes, and further payment of a fair and reasonable fee, pending termination of litigation now pending in the Pulaski County Chancery Court against Virginia Warren Neal.

(6) That before Bradley accepted his said assignment he visited Block Realty Company and caused W. B. Warren to write to Block Realty a letter dated May 16, 1960, which read:

"May 16, 1960. Block Realty Company, 212 Spring Street, Little Rock, Arkansas. Gentlemen:

"You are holding two notes for collection which belong to me and which I have assigned to Brooks Bradley, my attorney, as per the enclosed assignment. Please hold said notes for collection and you are hereby specifically requested not to deliver said notes or any collections thereon, to anyone other than Brooks Bradley, my attorney.

"Yours very truly, /s/ W. B. Warren."

(7) That Block Realty Company endorsed on the aforesaid letter the following:

"Received the original of this letter together with copy of assignment this 16th day of May, 1960. /s/ Block Realty Co. by Sam A. Block."

(8) That Bradley caused the assignment from W. B. Warren to him to be filed for record and recorded in the office of the Circuit Clerk and Recorder of Pulaski County, Arkansas, on May 17, 1960; and that the assignment of Virginia Warren Neal, mentioned in Paragraph (3) *supra,* was never recorded.

"WITNESS my hand and seal this 16th day of May, 1960.
"STATE OF ARKANSAS)
COUNTY OF PULASKI)  ss    ACKNOWLEDGMENT
"On this day personally appeared before the undersigned, a Notary Public, Jean Loper, within and for the County and State aforesaid duly qualified, commissioned and acting, W. M. Warren to me well known as the Grantor in the foregoing Assignment, and stated that he had executed the same for the consideration and purposes therein mentioned and set forth.

"WITNESS my hand and official seal on this 16 day of May, 1960. /s/ Jean Loper, Notary Public. My Commission Expires: April 6, 1964.

"No. 14482 FILED FOR RECORD May 16, 1960 at 11:05 A.M. AND RECORDER May 17, 1960. (SEAL) ROGER McNAIR, CIRCUIT CLERK.

"This instrument prepared by Brooks Bradley, 617 Pyramid Life Bldg., Little Rock, Ark."

(9) That Bradley associated McHughes with him in the Warren case, and McHughes stands or falls with Bradley in the present case.

I. *The Recording Statutes.* We have stated the facts in considerable detail and now we come to the appellant's first point, which is that "The recordation statutes do not apply to an assignment of notes."[3] The assignment to Virginia Warren Neal was in 1956 and the assignment to Mr. Bradley was in 1960. Even though the Neal assignment was prior in point of time, the Trial Court held the Bradley assignment to be superior because the Bradley assignment was recorded and the Neal assignment was not recorded. We reach the conclusion that our re-cording statutes do not apply to notes or proceeds of notes, but only to liens on land. These statutes are in Ark. Stat. Ann. § 16-101 (Repl. 1956) *et seq.* Section 16-101 requires the recorder to provide books for record-ing "all deeds, mortgages, conveyances, deeds of trust, bonds, covenants, defeasances, or other instruments of writing of or concerning any lands and tenements or goods and chattels." Section 16-103 relates to "any deed, mortgage, deed of trust, bond, conveyance, or other instrument of writing authorized by law to be recorded." Section 16-107 requires an index concerning "Deeds, mortgages, or other instruments in writing concerning lands and tenements." Section 16-115 provides that "no deed, bond, or instrument of writing for the conveyance of any real estate or by which the title thereto may be affected in law or equity, hereafter made or executed

---

[3] Throughout this entire record the parties have wisely and cor-rectly referred to the transfers by Mr. Warren as "Assignments." It does not appear that Mr. Warren made a negotiation or indorsement on either one of the notes sufficient to comply with either the Nego-tiable Instruments Law or the Uniform Commercial Code. The at-tempted transfers to Neal and Bradley fail as such "indorsements" to comply with either the Negotiable Instruments Law or the Uniform Commercial Code, because neither of the transfers was a complete transfer of the entire instrument. A life estate was retained in the Neal transaction; and the Bradley transaction was to secure the pay-ment of attorney fees. "The indorsement must be an indorsement of the entire instrument." 11 Am. Jur. 2d p. 343, "Bills and Notes" § 320. See annotation in 63 A.L.R. 499, "Construction and application of provision of Negotiable Instruments Law in respect to indorsements which purport to transfer only part of amount payable." See also companion annotation in 149 A.L.R. 1055.

shall be good or valid against a subsequent purchaser of such real estate . . ." It will thus be seen that our recording statutes relate only to instruments touching and affecting real estate. The recording of the assignment from Warren to Bradley gave notice to the world *as regards the lien on the lands,* but gave Bradley no right superior to the prior assignment of the notes to Neal.

The general rule is that recordation statutes do not apply to assignment of notes unless specifically so stated by statute. In 4 Am. Jur. 300, "Assignments" § 88, in speaking of recordation, the text states: "Ordinarily, however, the recording statutes are inapplicable to assignments." In 45 Am. Jur. p. 444, "Records and Recording Laws" § 43, cases are cited to sustain this textual statement: "Notes secured by a mortgage may be effectively transferred as to all persons without recording if there is no requirement in the recording act that the transfer be recorded." Again, in 11 Am. Jur. 2d p. 348, "Bills and Notes" § 326, the text reads: "General recording acts do not apply to assignments of choses in action, and recordation is not required in absence of a statute specifically applicable to them. . . . A note secured by a mortgage may be effectively transferred as to all persons without recording if there is no requirement in the recording act that the transfer of the note be recorded." We find no authority that would support a holding that the prior unrecorded assignment of a note may be defeated by a subsequent recorded assignment.[4]

So we conclude that the recording statutes in Arkansas afford no protection to Bradley and that the as-

---

[4] Originally it was held in Arkansas that the assignment of a vendor's lien note was protected in a lien in the land even if the assignor released the lien of record. See *Hebert V. Fellheimer,* 115 Ark. 366, 171 S. W. 144; and *Driver* v. *Lacer,* 124 Ark. 150, 186 S. W. 824. But by Act No. 374 of 1917, as now found in Ark. Ann. § 51-1016 (1947), the law was changed, so now if the assignor is the lien holder of record then a release by him will protect a subsequent purchaser of the land as against the assignee *even though the debt itself is unaffected by the release of the lien. Kinney* v. *N. Memphis Sav. Bank,* 178 Ark. 716, 11 S. W. 2d 486; *Vance* v. *White,* 180 Ark. 470, 21 S. W. 2d 853; and *Farmer's Bank & Trust Co.* v. *Taylor,* 189 Ark. 939, 75 S. W. 2d 808.

signment to Mrs. Neal is superior to the Bradley assignment since the Neal assignment is prior in point of time; and this holding renders it unnecessary for us to consider the appellant's second point regarding knowledge.

II. *Res Judicata.* The appellees insist that even if the recording statutes do not apply, nevertheless the appellees should prevail since the appellees insist that the prior litigation is *res judicata* against the appellant. We cannot agree with appellees in such insistence. In the first case—as reported in 234 Ark. 728, 354 S. W. 2d 269—the only question was the amount of the fee to which Mr. Bradley was entitled. His claim was treated as an ordinary claim. There was no mention in our opinion as to any assignment to Virginia Warren Neal, and such assignment was not within the purview of the issues in the first case. *Robertson* v. *Evans,* 180 Ark. 420, 21 S. W. 2d 610. Thus, there is no *res judicata* in favor of the present appellees.

The judgment is reversed and the cause remanded for entry of a judgment in keeping with this opinion and for further proceedings not inconsistent herewith.